**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| **VICTOR PADILLA,** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | **Case No.** |
| | * | |
| **ABDUL FARID KHAIR** | * | |
| Trading as Best Auto Sales | * | |
| | * | |
| **Defendant** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## COMPLAINT

Comes now the Plaintiff, Victor Padilla, by and through his counsel, Matthew P. Gorman and the Law Offices of Matthew P. Gorman, LLC, and as and for his Complaint for Judgment against Abdul Farid Khair trading as Best Auto Sales, states the following:

1.      Plaintiff Victor Padilla ("Padilla") brings this action for damages to redress his damages caused by the defendant car dealer, Abdul Farid Khair ("Best Auto").  The action involves fraud in the sale and financing of a car and the subsequent illegal conversion of the same.  Padilla seeks to recover actual and statutory damages, plus reasonable attorney's fees and his costs and expenses of litigation arising from the defendant's negligence, its fraud, and its violations of the Virginia Consumer Protection Act, the Truth in Lending Act and the Federal Odometer Act. He also seeks to recover punitive damages for Defendant's willful misconduct in conscious disregard of his rights and best interests.

2.      The Plaintiff is a natural person and resident of Montgomery County, Maryland.

3.     Upon information and belief Defendant Abdul Farid Khair is a natural person and a resident of Fairfax County, VA trading as Best Auto Sales (hereinafter "Best Auto or Defendant" located at 3217 N. 10th Street, Arlington, VA 22201.

4.     Defendant at all relevant times, owned and operated a car dealership, which in the ordinary course of its business regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments making the Defendant a creditor within the meaning of the Truth in Lending Act, 15 U.S.C. §1602(f) and Regulation Z, 12 C.F.R. 226.2(17).

## JURISDICTION

5.     This Court has jurisdiction over this action pursuant to 15 U.S.C. 1640(e), 49 U.S.C. §32710(b), and 28 U.S.C. § 1331, and supplemental jurisdiction of the state law claims regarding the same transactions and events under 28 U.S.C. 1367(A).  Declaratory relief is requested pursuant to 28 U.S.C. 2201 and 2202, and also under Va. Code 59.1-205.

## FACTS

6.     On or about May 21, 2011, Padilla, as buyer, and Best Auto, as seller, executed a Buyer's Order for the sale of a 2005 BMW 5 Series Sedan (the "BMW").   A true and accurate copy of the Buyer's Order is attached hereto, marked Plaintiff's Exhibit 1.

7.     That day, they also executed a "Retail Installment Contract and Security Agreement" (hereinafter referred to as the "Credit Contract").  A true and accurate copy of the Credit Contract is attached hereto, marked Plaintiff's Exhibit 2.

8.     The transaction in question was a sale of goods by a merchant of such goods under the provisions of the UCC and the Virginia Consumer Protection Act.

9.      Pursuant to the express terms of the Credit Contract, the Credit Contract shows an offer by Best Auto to extend credit to Padilla.

10.     After Padilla's acceptance of the Credit Contract, Best Auto became the creditor who extended credit to Padilla for the purchase of the BMW.

11.     Under the express terms of the Credit Contract, Padilla provided the full consideration required under the Buyer's Order for the purchase of the BMW when he signed the Credit Contract, obligated herself to make the sixty (60) payments to Best Auto.

12.     Pursuant to the express terms of the Credit Contract, on May 21, 2011, Best Auto began charging interest to Padilla at the rate of 21.250% per year on $21,218.57, the amount of credit identified in the Credit Contract as being provided to Padilla.

13.     As a creditor-seller, the only way for Best Auto to provide $21,218.57 worth of credit to Padilla on May 21, 2011, was for it to give transfer both title and possession of the BMW to him.

14.     On May 21, 2011, Best Auto gave Padilla possession of the BMW, and represented that it had also transferred title of the BMW to him.

15.     Best Auto represented that it had transferred him title by preparing and giving him an Odometer Disclosure Statement, and by requiring him to obtain insurance on the car as if it was his. A true and accurate copy of the Odometer Disclosure Statement is attached hereto, marked Plaintiff's Exhibit 3.

16.     Best Auto further represented to Padilla that it had transferred title of the car to him by giving him a Temporary Certificate and temporary plates. A true and accurate copy of the Temporary Certificate is attached hereto, marked Plaintiff's Exhibit 4.

17.     When Best Auto gave Padilla the Temporary Certificate and temporary plates, it was acting as an agent of the Department of the Motor Vehicles.

18.     As an agent of the Department of Motor Vehicles, Best Auto was required to send the necessary documents and official fees for the sale to the Department of Motor Vehicles to complete the processing of the transaction or to provide Mr. Padilla with the documents necessary for him to do the same.

19.     Padilla reasonably relied on the representations by Best Auto that title to the BMW had been transferred to him.

20.     Padilla reasonably relied on the representation by Best Auto that his documents and fees were being forwarded to the Department of Motor Vehicles.

21.     Contrary to its representations, Best Auto never transferred title of the BMW to Padilla, and never forwarded his documents and fees to the Department of Motor Vehicles.

22.     Contrary to its representations, Best Auto knew at the time it prepared the Buyer's Order, the Credit Contract, the Temporary Certificate, and the Odometer Disclosure Statement, that it would not be transferring title of the BMW to Padilla that day.

23.     Contrary to its representations, Best Auto never intended to transfer title of the BMW to Padilla unless and until it could sell the Credit Contract to a third party.

24.     Best Auto has an established business practice of misrepresenting to its credit consumers that title is being transferred to them at the time of sale.

25.     Padilla went to Best Auto in response to an online advertisement promising "100% Credit Approval".

26.     As a result of the advertisement and the salesman's tactics, Padilla agreed to buy the 2005 BMW for $28,218.57

27.     He was assured by the salesman and by a finance person named AJ that the credit was fine.

28.     On or about May 26, 2011, an employee of Best Auto, Teric Khairzada called and informed Padilla that his application for credit had been denied by "the Bank" and that he would have to either complete a new application and be subject to even more onerous term or he would have to return the vehicle.

29.     Mr. Khairzada made these representations knowing them to be false and further knowing that under the Credit Contract, prepared by Best Auto, Best Auto was the creditor/lender who extended credit to Padilla for the purchase of the BMW.

30.     In response to Mr. Khairzada's demands, Padilla offered to return the vehicle in exchange for the return of his deposit.  Mr. Khaizada and Mr. Khair both refused this offer and informed Mr. Padilla that he had forfeited his deposit and that he needed to return the car or that they would repossess the vehicle.  They further informed Mr., Padilla that they would not, under any circumstances sign the title of the vehicle over to him.

31.     On or about June 13, 2011 Padilla received a letter dated June 1, 2011, postmarked June 9, 2011, informing him that he had "ten (10) days to pay the account balance in full" a $23,218.57 balance they without any basis allege was due as of June 1, 2011.

32.     On or about the same day undersigned counsel prepared and mailed to Best Auto Sales a letter, reminding Best Auto of its legal duty to provide title to the vehicle to Padilla and again offering to return the vehicle in exchange for a return of the down payment.

5

33.     Best Auto later seized the BMW from Padilla without his permission.

## FIRST CAUSE OF ACTION
### *Conversion*

34.     Padilla adopts, reiterates and incorporates by reference paragraphs 1 through 33 as if fully set out herein.

35.     Pursuant to established business practices established and implemented by Defendant, he never delivered title to the car to Plaintiff, and then seized the vehicle, never returned it to Plaintiff, and withheld Plaintiff's down payment.

36.     Because Defendant had transferred any right to possession to Plaintiff, even though title had not been put in his name, Padilla was in lawful possession of the BMW at the time of its seizure by Defendant.

37.     When Best Auto seized the BMW from him, it had no right to possession of it

38.     Best Auto has not returned the BMW to Padilla and continues to detain it from him without his permission.

39.     Best Auto has further improperly retained the down payment paid by Plaintiff.

## SECOND CAUSE OF ACTION
### *Violations of the Virginia Consumer Protection Act*

40.     Padilla adopts, reiterates and incorporates by reference paragraphs 1 through 33 as if fully set out herein.

41.     Best Auto violated the prohibitions contained in Va. Code § 59.1-200(A)(2) and (5) by each of the following actions:

a.  by misrepresenting that Cresent Bank & Trust had approved the Credit Contract;

b.  by misrepresenting that title had been transferred to Plaintiff; and

c.  by misrepresenting that Plaintiff's title interest was properly being processed with the Department of Motor Vehicles.

42.    Best Auto violated the prohibitions contained in Va. Code § 59.1-200(A)(14), against using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction by each of the  following actions:

a.  by misrepresenting that Cresent Bank & Trust had approved the Credit Contract;

b.  by misrepresenting that title had been transferred to Plaintiff;

c.  by misrepresenting that Plaintiff's title interest was properly being processed with the Department of Motor Vehicles;

d.  by failing to comply with the requirements of Va. Code. 46.2-629 and Va. Code 46.1532 to provide odometer disclosures properly;

e.  by charging Plaintiff $395 to process title documents when Defendant had no intention to, and did not, process any title documents;

f.  by not properly itemizing the charges on the Buyer's Order to show the cost of goods and services provided to Plaintiff and the amount of state tax on that cost; and

g.  by refusing to return any of the down payment paid by Padilla.

43.    In this consumer transaction, the Defendant violated the prohibition of Va. Code 59.1-200(A)(8) against advertising goods and services with the intent not to sell them as advertised by its advertisement, its statements about the amount of the down payment, its statement about the approval of credit, and its subsequent demand for Plaintiff to return the

vehicle accompanied by its simultaneous refusal to return any portion of Plaintiff's down payment.

44.     Padilla was harmed by Best Auto's misrepresentations by, among other things, the loss of his car, the loss of time and inconvenience flowing from losing his car, and distress damages caused by Best Auto's misrepresentations, and its eventual seizure of his car.

45.     Padilla is entitled to recover three times his actual damages, pursuant to Va. Code § 59.1-204.

**THIRD CAUSE OF ACTION**
*Fraud/Constructive Fraud*

46.     Padilla adopts, reiterates and incorporates by reference paragraphs 1 through 33 as if fully set out herein.

47.     Best Auto intentionally misrepresented to Padilla that it would transfer title to his at the time of sale.

48.     Best Auto intentionally misrepresented to Padilla that it had transferred title of the car over to him at the time of sale.

49.     Best Auto intentionally misrepresented to Padilla that it would process his title interest in the car with the Department of Motor Vehicles for a fee of $395.00.

50.     Furthermore, although the purported processing fee was disclosed as $395 including sales tax, pursuant to established business practice, Best Auto never disclose to Padilla the price of the processing fee without the sales tax and did not separately itemize the sales tax on the processing fee.

51.     Best Auto intentionally misrepresented to Padilla that his financing was approved.

52.     Best Auto made each of these misrepresentations so that Padilla would sign the Buyer's Order and the Credit Contract, become obligated to pay the amounts shown on those contracts, and purchase insurance on the car.

53.     In reliance on Best Auto's misrepresentations, Padilla signed the Buyer's Order and the Credit Contract, became obligated to pay the amounts shown on those contracts, provided insurance on the car, and then lost his car when each of those representations turned out to be false.

54.     In the alternative of a claim for actual fraud, the above misrepresentations were made innocently or negligently to allow for a claim of constructive fraud.

### FOURTH CAUSE OF ACTION
*Va. Code § 8.9-507 (UCC)*

55.     Padilla adopts, reiterates and incorporates by reference paragraphs 1 through 33 as if fully set out herein.

56.     Best Auto was a secured creditor who had a security interest in Padilla's car to secure the payments due it under the Credit Contract.

57.     Best Auto repossessed Padilla's car and never provided any notice required by Va. Code § 8.9-504(3) about how it disposed of it.

58.     Best Auto repossessed this secured property before Padilla was in default of his obligations to Best Auto.

59.     Best Auto's repossession did not comply with the requirements of Va. Code 8.9-504(3), because Padilla was not in default of his obligations, and because Best Auto did not provide any notice of how it disposed of the car.

60.      Best Auto's failure to comply with the legal requirements for repossessing a vehicle entitle Padilla to recover statutory damages under Va. Code § 8.9-507.

**FIFTH CAUSE OF ACTION**
*Truth in Lending Act Violations*

61.      Padilla adopts, reiterates and incorporates by reference paragraphs 1 through 33 as if fully set out herein.

62.      The $395.00 processing fee charged by Best Auto should not have been included in the amount financed because that fee was related to the extension of credit

63.      By improperly including the $395.00 processing fee in the amount financed instead of the finance charge, the Defendant disclosed the annual percentage rate as lower than the true annual percentage rate, and misdisclosed the amount financed and the finance charge.

64.      By improperly starting to charge interest on the amount financed before actually providing the amount financed to Plaintiff's , the Defendant disclosed the annual rate as lower than the true annual percentage rate.

65.      Best Auto as creditor violated the Truth in Lending Act and Regulation Z by failing to properly deliver all "material" disclosures as required by the Truth in Lending Act and Regulation Z, including the following:

a.  by failing to disclose accurately the "finance charge," in violation of 15 U.S.C. § 1638(a)(3) and Regulation Z, 12 C.F.R. § 226.18 and 226.4;

b.  by failing to disclose accurately the "amount financed" in violation of 15 U.S.C. § 1638(a)(2) and Regulation Z, 12 C.F.R. § 226.18(b); and

c. by failing to disclose accurately the "annual percentage rate," in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z, 12 C.F.R. § 226.18(e).

66.  The Defendant also violated this Act by failing to deliver any disclosures to Plaintiffs in a form they could keep prior to the consummation of the transaction as required by 15 U.S.C. § 1638(b)(1) and Regulation Z, 12 C.F.R. 226.17(a) and (b).

67. The Defendant further violated this Act because it treated the disclosures on the Credit Contract as estimates about the terms of the credit that it might provide Plaintiffs, and pursuant to Regulation Z 226.17(c)(2), the disclosures should have been marked as estimates.

## SIXTH CAUSE OF ACTION
### Violation of Federal Odometer Act

68.    Pursuant to 49 U.S.C. § 32705, the Defendant was required to create an odometer disclosure on the official title document for the sale of the car to Plaintiffs.

69.    The Defendant violated the placement requirement of the federal Odometer Act because it did not use an official title document to create the disclosure of the odometer mileage for the sale to Plaintiffs.

70.    The Defendant's violation of this requirement was done with intent to defraud.

## SEVENTH CAUSE OF ACTION
### Breach of Express Warranties

71.    Padilla adopts, reiterates and incorporates by reference paragraphs 1 through 33 as if fully set out herein.

72.    The Defendant made an express warranty that the credit had been approved.

73.    An express warranty of title was also part of the transaction.

11

74.     Both of these express warranties were breached when Plaintiffs were denied the benefit of approval of their credit and when they never received title in their name.

### *Request for Punitive Damages for Conspiracy, Conversion, and Fraud*

75.     Defendant's actions show willful and malicious conduct in conscious disregard to Plaintiffs' rights sufficient to justify an award of punitive damages.

76.     Defendant's continuation and expansion of the aforementioned established business practices in defiance of laws, which have repeatedly been brought to their attention, justifies the maximum amount of allowable punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

1.      Assume jurisdiction of this case;

2.      Award statutory damages of $1,500.00, or treble actual damages, whichever is greater, pursuant to the Federal Odometer Act, 49 U.S.C. § 32710(a) against the Defendant as seller;

3.      Award statutory damages in the amount of twice the finance charge in accordance with the Truth in Lending Act, 15 U.S.C. § 1640(a)(2)(A)(i) against Defendant as the creditor;

4.      Award actual damages under the Truth in Lending Act, Federal Odometer Act, Conversion, Virginia Consumer Protection Act, breach of warranty, Conspiracy, and Fraud claims;

5.      Award three times the actual damages or $1,0000.00, whichever is greater, for each willful violation of the Virginia Consumer Protection Act pursuant to Va. Code 59.1-204 against the Defendant;

6.      Award the finance charge plus 10% of the cash price pursuant to Va. Code 8.9-507 against Defendant as the secured party;

7.      Assess punitive damages against Defendant in the amount of $200,000.00;

8.      Pursuant to 28 U.S.C. 2201 and 2202, declare that the Defendant's actions were deceptive and that no Defendant can claim that Plaintiffs' credit application was not approved. Consequently, because inquiries on their credit report will harm their credit score if they are not accompanied by a report of an extension of credit and to keep any negative information from being reported about this transaction, this Court should order Defendants to report that credit was extended to Plaintiffs, and that the credit was properly retired by Plaintiffs;

9.      Pursuant to Va. Code 59.1-205, declare that the Defendant's actions violated the Virginia Consumer Protection Act and restore to any identifiable person any money or property which the Defendant may have acquired from such person by means of any of these violations;

10.     Award Plaintiffs' costs and reasonable attorney's fees in accordance with the Truth in Lending Act, the federal Odometer Act, and the Virginia Consumer Protection Act; and

11.     Award Padilla such other relief as the court deems appropriate.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,


 /s/  Matthew P. Gorman          
Matthew P. Gorman (Fed. Bar No. 18059)
Law Offices of Matthew P. Gorman, LLC
4915 St. Elmo Avenue, Suite 300
Bethesda, Maryland 20814
Telephone: 301-715-3824 Facsimile: 888-524-8142
mgorman@mpgormanlaw.com
*Attorneys for Plaintiff, Victor Padilla*